In our next case this morning is Moreno v. Berryhill, 1954. Mr. Schultz, whenever you're ready. Mr. Schultz May it please the Court, Your Honors, Berry Schultz on behalf of the appellate Alejandro Moreno. In this case the administrative law judge improperly relied on and gave great weight to the opinion of the non-examining state agency psychologist, Dr. Wharton. Because after Dr. Wharton issued her opinion and between then and when the ALJ issued his decision, there were seven years worth of treatment notes for Mr. Moreno's psychiatric psychological conditions entered into the record. And that includes 180 treatment visits with the treating psychologist, Dr. Gonzalez, and Dr. Wharton was unaware of any of that evidence that was submitted. At page 420 of the administrative record in Dr. Wharton's report, she actually indicates that on her review of the record, no treating source had given any diagnosis of a mental impairment. So that establishes that Dr. Wharton was unaware of any treatment that Ms. Moreno received. The long time gap was attributable to just the procedural posture of the case when it was finally resolved? Or what was the reason for that? Well, there were two things. Mainly it was just the procedural posture because the case had been up on appeal and back. So by the time this ALJ heard the case, seven years had gone by. Yes, it was very stale. And also the plaintiff had not submitted. There were some records from Dr. Gonzalez that were in existence at the time that Dr. Wharton issued her decision. A few treatment notes, but they had not been submitted into the record yet by Mr. Moreno. I don't know if he was represented when he went through the initial and reconsideration determinations in his case initially. This court has held now in numerous cases, including Muser v. Colvin and Childress, and Stage and Goins v. Colvin, as well as Campbell v. Astru, that where an ALJ relies on a state agency opinion by a doctor who was not aware of significant evidence, that that's reversible error and the matter should be remanded. In fact, in Campbell, the state agency psychologist had not reviewed 15 months of treatment records, and this court reversed saying that the ALJ should not have relied on the state agency opinion because of that. In this case, we don't have 15 months, but probably 80 months of records that Dr. Wharton had not reviewed. So then the ALJ wrote a long decision in this case. There was a long summary of the evidence, but the analysis- Including these after-the-fact medical records. Yes, the ALJ summarized those records, but the ALJ being a layperson, not a psychological or psychiatric expert, really doesn't have the expertise to review seven years' worth of psychological psychiatric treatment and determine what functional limitations were caused by those limits. So precisely what, in your view, needs to be done if we were to send this case back down? Well, most likely the ALJ should obtain an opinion from an expert, either call a medical expert to testify at the hearing or send Mr. Moreno out for a psychological consultative evaluation and send all the records to that doctor to review so the ALJ has an expert opinion on the matter. Would there necessarily be anything that had to be done on the physical side of his disabilities? Anything further need to be done there? We didn't raise any issues concerning that. The ALJ had a medical expert actually testify concerning the physical impairment. So the ALJ did what needed to be done to get a proper opinion. And that is up to date as far as you're concerned? Yes. I see. That was the thrust of my inquiry. And the medical expert who did testify, the ALJ thought it was necessary to have a medical expert for the physical impairment. And when Dr. Martin testified, she actually said that she thought that Mr. Moreno's pain was largely due to his depression, that there was some pain due to his physical problems, but it was mostly a psychiatric issue. That should have also given the ALJ a reason to an understanding that he needed to obtain an opinion concerning the psychological aspects of the case. Even if the court found that the ALJ reasonably relied on Dr. Wharton's opinion, having given that Dr. Wharton's opinion great weight, the ALJ erred by failing to include one of the limitations that Dr. Wharton found, which was the limitation to only performing jobs with one- to two-step tasks. The district court found that just because an ALJ gives great weight to a doctor's opinion, that does not mean the ALJ has to adopt all of the limits that that doctor sets forth. The plaintiff agrees with that proposition. But this court has held for many years now that ALJs must build a logical bridge from the evidence to their conclusions. If an ALJ gives great weight to a doctor's opinion, but then fails to include one of the limitations that that doctor provided, there is no logical bridge unless the ALJ explains why he's rejecting that specific limitation. In this case, while the ALJ noted the one- to two-step limitation in Dr. Wharton's report, the ALJ provides no explanation why he's rejecting or whether he's rejecting that limit. The court can't tell whether the ALJ meant to include it, but just neglected to, or if he meant to reject it because he doesn't provide any explanation. Does that make any difference here? Well, it could make a difference because we're talking about the ALJ said that Mr. Marino was limited to simple work in assessing his functional capacity. Right. And that's not the same thing? It's not the same thing. In the Dictionary of Occupational Titles, which the Social Security Administration takes administrative notice of, there are reasoning levels, and a reasoning level one is a limitation to one- to two-step instructions. Reasoning level two is detailed but uninvolved instructions, and then it goes up from there. So a limitation to one- to two-step tasks suggests that the plaintiff would be limited to only reasoning level one jobs and not be able to do any higher-level jobs. So it does make a difference. This court has not addressed that issue specifically, although in the Terry v. Astrew case, this court has indicated that a limitation to simple work would actually potentially allow a reasoning level three job. So the court did seem to recognize that simple is not a term of art and could have a range of jobs a person could perform, whereas a limitation of the one- to two-step task is more limiting. Thank you very much, Your Honors. Thank you. Ms. Freeberg? May it please the Court, Counsel, Cynthia Freeberg, on behalf of the Acting Commissioner of Social Security. This case involves a very thorough and detailed ALJ's decision, where the ALJ considered and discussed all the record evidence. Moreno has failed to even attempt to identify any evidence not confronted by the ALJ. Further, Moreno does not make the usual Social Security arguments. He's not arguing that the ALJ erred in considering his treating psychiatrist opinion, doesn't argue that he erred in his subjective symptom evaluation. Instead, he challenges the ALJ's consideration of the reviewing psychologist opinion, the mental RFC finding for a range of simple routine work. But significantly, the ALJ did more than limit Moreno to simple and routine work. He limited Moreno to work also involving only occasional changes and only occasional decision-making and only occasional interaction with the public. And the ALJ thoroughly explained why he did so. He explained, after his thorough review of all those treatment notes, both Dr. Petamonte's, his psychiatrist's, and Dr. Gonzalez's, the ALJ explained, looking at Dr. Gonzalez's notes, it was clear that Moreno was functioning better and his symptoms of depression were alleviated when he was functioning in a structured environment. The ALJ provided that structure in the mental residual functional capacity finding. Moreno stated that he agrees that the ALJ was not required to adopt Dr. Wharton's restriction to one- and two-step work, that the NALJ is not required to adopt every limitation opined by a psychologist because he gives it great weight. The report was seven years old by the time this case was decided. Dr. Wharton's assessment. And there had been 180 some odd psychiatric or psychological visits in the intervening seven years. Is it not reasonable to think that something that happened during that time period would have been important to Dr. Wharton's conclusions and so an updated report should have been obtained? Not necessarily, not considering the content of Dr. Gonzalez's notes, which the ALJ thoroughly did. Although Moreno's symptoms seemed to wax and wane, again, the ALJ pointed out several examples where Moreno was doing better in a structured environment, when he had a routine, he reported, he noted Moreno's report of improvement when he was able to participate in decision-making about roof repairs because he used to work in construction. The ALJ considered all these notes, and an ALJ is only required to obtain an updated opinion when in the ALJ's opinion that would change the state agency psychologist's assessment of a claimant's limitations. Well, that's not unreviewable, though. I mean, it's an objective test, right? Whether it's reasonable to think that the ALJ's opinion would need to account for the changes over seven years of psychiatric treatment, psychological treatment. Well, Moreno thinks that it does require an updated opinion, and our position is that it does not. I understand that's your position, but we're not required to accept the ALJ's contrary conclusion that he didn't need... No, no. Right, that's not conclusive or unreviewable. Right. We test that for whether it's reasonable. It's our position that the ALJ's decision is supported by substantial evidence, given his thorough consideration and discussion of the evidence. Going through each note, I don't think the ALJ missed any of the treatment notes. There's nothing, like I said, although the symptoms waxed and waned, there were notes showing when Moreno was functioning better, and those notes showed he functioned better with structure and with routine. I don't think the question is whether the ALJ considered those 180 visits. I think the question is whether it was for the expert whose opinion the ALJ gave great weight to needed to consider that seven years of intervening medical treatment in order to update the opinion. Where the ALJ relies on an expert, the ALJ needs to go back to that expert with that kind of additional treatment record. If it were de minimis, maybe not, but it's 180 visits over seven years. Well, again, but these notes aren't showing any sort of significant decline. They're not showing any really significant impairment in functioning that the ALJ did not accommodate with his very well-tailored mental RFC finding. May I continue? Please. Again, in his brief, Moreno had made the point that he couldn't function in an English as a second language class, so how could he function in a work setting? Because taking a language class was a structure for him. I would just like to point out that there was absolutely no showing that his English as a second language class was tailored to fit his limitations with simple instructions, simple judgment, simple decision-making, only occasional changes, occasional interaction with the public, and the jobs identified by the VE had only occasional interaction with coworkers and supervisors. In his English class, Moreno testified, at the hearing he testified, he had problems in the English class because he was bossy to the people, he had problems with the teacher. He had previously testified he did not like being in large groups of people. He became anxious, he had panic attacks, so it certainly doesn't seem like his performance or his dropping out of his English class was any indication to his ability to work when the jobs of VE identified accommodated all the limitations found by the ALJ. And I would also just like to point out that even if we do not concede that the ALJ should have adopted Dr. Wharton's restriction to one- and two-step tasks, but I would just like to point out that the agency does not, there's no direct correlation, there's no direct correlation between the reasoning development level and any certain mental functional limitation, and Mr. Schultz did recognize that this Court has not addressed the issue. However, the Tenth Circuit and the Third Circuit in the cases cited in our brief do recognize there's no direct correlation. And even if, still, even if one- and two-step tasks, and again we do not concede, but even if the limitation to one- and two-step tasks did restrict Moreno to a reasonably level one, the VE identified sedentary reasoning level one jobs that Moreno could perform, as in his brief Moreno has acknowledged. If there's no further questions, I'll rest on our brief. Thank you. Thank you. Mr. Schultz. I would just like to, it's a very big record, so I'd like to point out just a few pages of the record for the Court maybe to consider. At 637 to 651, those are 2007 records from Dr. Gonzalez. 1946 to 1951, those are 2010 records. In 1992 to 1999, those are 2012 records. The reason I pick those records out is because they're actually very consistent over that five-year period of time where Dr. Gonzalez is recognizing that when Mr. Moreno comes in to see him, his mood is often depressed. His affect is sad. He's sometimes tearful. He sometimes has suicidal ideation. He's distracted. He's irritable. And this goes on over a seven-year period. The ALJ points out the 2013 treatment notes that do seem to indicate that with structure Mr. Moreno did better. But again, as this Court pointed out in Muser v. Colvin, the fact that somebody responds to treatment can be a far cry from the person's ability to go back into the workforce. In addition, you'll see if you look at these pages that back in 2007, Mr. Moreno was doing better when he tried to schedule his activities. Then in 2013, again, he's doing better when he tries to schedule his activities. But in the meantime, he's still consistently having these very significant symptoms. The last thing I'd like to point out is that the cases that defendants cite in the brief on the one- to two-step task issue don't actually address that issue. They talk about if there's a limitation to simple work, can the person engage in a variety of jobs within reasoning levels? But that doesn't go to the heart of our plaintiff's argument here, which is that the limitation to one- to two-step tasks should have been presented to the vocational expert to get an expert opinion on the impact of that. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.